Lee H. Durst, Esq. [SBN 69704]
lee.durst@gmail.com
Larry Rothman, Esq. [SBN 72451]
tocollect@aol.com
Greg Mortensen, Esq. [SBN 86491]
gmortlaw@gmail.com
Richard Lucal, Esq. [SBN 143372]
ral@looral.com
CENTER FOR INDIGENOUS LEGAL AFFAIRS
23 CORPORATE PLAZA, SUITE 150
NEWPORT BEACH, CALIFORNIA 92660
Tel: 949-478-8388 & Fax 714-242-2096
Attorney for Plaintiffs: JAMES MOONEY, OKLEVUEHA NATIVE AMERICAN CHURCH, ONAC VALLEY OF THE MOON CHURCH AND SCOTT BATES

# U.S. DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES MOONEY, OKLEVUEHA NATIVE AMERICAN CHURCH, ONAC VALLEY OF THE MOON CHURCH AND SCOTT BATES, <br><br> Plaintiffs, <br><br> vs. <br><br> SONOMA COUNTY AND THE SHERIFF OF SONOMA COUNTY, <br><br> Defendants. | Case No.: <br><br> COMPLAINT FOR INJUNCTIVE RELIEF <br><br> FEDERAL QUESTION UNDER THE FIRST AMENDMENT OF THE US CONSTITUTION – FREEDOM OF RELIGION <br><br> 28 USC 1331 |

Plaintiff alleges as follows:

## GENERAL ALLEGATIONS

1. Plaintiffs are and, at all times relevant herein, a Citizens of State of California, and Utah

2. Plaintiffs rent the real property located at 1141 Lawndale Road, Kenwood, California. (Hereinafter referred to as "the subject property.")

3. Plaintiff alleges that Defendant County of Sonoma (hereinafter referred to as "Sonoma") is a Citizen of the State of California.

4. Jurisdiction is proper in this court because of 28 USC 1331, "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

5. Sonoma has been to the subject property before last year under the guise of looking for health and safety violations. Instead of simply looking at the property which is part of the Oklevueha Native American Church, ("ONAC") which has been around nearly 100 years and was incorporated by Theodore Roosevelt, so as to protect the Native American way of life and all of their religious beliefs. But Sonoma and its sheriff came on to the Church Property and "discovered" that the ceremonial marijuana was growing and Sonoma County Officials destroyed all of these plants. Now they want to do it all over again. They have been threatening to get a search warrant so that they will have access to the property and destroy this year's sacramental plants. The first Native American Church was

incorporated in 1918. James Mooney, Smithsonian Institute Ethnologist, James Mooney co-Founder of ONAC, Great Grand-Father, drafted the By-Laws of the first Native American Church to be incorporated. Native American Churches maintain an excess membership of 450,000 members. ONAC was first officially formulated April 11, 1997, presently with an estimated membership of more than 15,000 people and with more than 200 branches worshiping throughout and representing the indigenous spirituality and cultures of North and South America, the United States, Mexico, Canada and Peru. President Leslie Fool Bull blessed James Mooney and the ONAC church to be an extension of the Rosebud Reservation Native American Church of South Dakota: March 20, 1998. *(See attachment A.)* Confirmation and Sustaining Blessing by Richard 'He Who Has The Foundation' Swallow', (Richard Swallow) President of the Rosebud Reservation Native American Church of South Dakota: August 19, 2007. *(See attachment B.)* Shortly following the confirmation James Mooney and Richard Swallow formally enjoined ONAC with the Lakota Sioux Native American Church on December the 17th 2007. *(See attachment C.)*

By law these plants were protected by the First Amendment – Freedom of Religion. "**Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof**; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances." Apparently, the County of Sonoma does not

Compl

believe in FREEDOM OF RELIGION. Or they have decided that they can decide what is or is not a church. But they do not have that right and they need to be stopped so as to protect the integrity of the Church and its membership. For almost 200 years, however, there has been a prejudicial Bureau of Indian Affairs (BIA) conspiracy by a racist **war department** of the federal government that historically and currently is aimed at the complete eradication of the Ancestral Earth-Based Religions of the Indigenous Native American Peoples, their Cultures, Ceremonies, Sacraments, Value Systems and Choices of Stress Free Lifestyles that love, worship and honor Mother Earth. The blatant conspiracy actions of the BIA and its long history of actions against defenseless Indigenous Natives of North and South America have been disguised under the federal agenda of brutally and illegally forcing the assimilation of American Indians into "white mans" civilization and urban environments, whether or not the Native Americans are in agreement to such dramatic changes in their lifestyles. This forced assimilation required many Native Indians to unlearn and abandon all of their precious ancestral religions, ceremonies, sacraments, lifestyles and value systems. It further required the Native American Indians to send their young children away from home to religious based boarding schools at such a far distance from any tribal teachings or influences that ensured the forced assimilation. In these federally paid for religious schools, the children were forced to learn and adopt "white man's religions" as taught to the children by the religious schools that were funded by

the BIA. Children who attempted to practice any of their Indigenous Native American Peoples Cultures, Ceremonies, Sacraments, Value Systems and Choices of Stress Free Lifestyles were severely punished. Today, leadership that is openly opposed to the ancestral Native Indigenous Cultures, Teachings, Values and Religions is still managed by the BIA. In their appointed positions as controllers of the affairs of the BIA, they are autonomous and without any ethical checks or balances, due to the immunity they have as federal officers. The BIA has taken an illegal and unconstitutional social stance against the free practice of our country's native religion due to the fact that it does not incorporate the social norm religious doctrine that most government agencies and citizens are accustomed too. These normally recognized religions carry many constitutionally protected rights, as do the Members of ONAC. However, in a number of court cases related to the denying of the civil rights of ONAC Members, the illegal actions of the BIA has encouraged criminal discrimination by local agencies of church member's and minister's rights to practice their Native Indigenous Cultures, Ceremonies, Sacraments, Teachings, Values and Religions. ONAC churches are not a business but they are a recognized church with all the rights and privileges of any other Church situated in California. *(See attachment D.)*

7.      For a long time, however, inspections for regulatory purposes were thought not to implicate the Fourth Amendment. During the nineteenth century, courts consistently held that "the Fourth Amendment protected

only against criminal searches, and was inapplicable to civil searches." Fabio Arcila, Jr., *Special Needs and Special Deference: Suspicion less Civil Searches in the Modern Regulatory State*, 56 Admin. L. Rev. 1223, 1226 n. 7 (2004). *In* 1959 the Supreme Court seemed to agree. *See* Frank v. Maryland, 359 U.S. 360, 367 (1959) ("***Inspection without a warrant, as an adjunct to a regulatory scheme for the general welfare of the community and not as a means of enforcing the criminal law, has antecedents deep in our history***."), *overruled in part by* Camara v. Mun. Court, 387 U.S. 523 (1967). *Frank*, by a vote of 5–4, upheld the criminal conviction of a homeowner who refused to permit a warrantless inspection of his premises by a municipal health inspector. *Id*. at 361–62. Lower courts read *Frank* to hold that civil searches never required a warrant even though the opinion did not explicitly adopt that rule. *See Camara*, 387 U.S. at 529. However, the Court soon reversed its position, holding in *Camara v. Municipal Court* 387 U.S. 523. that warrants were necessary for administrative inspections of private residences, but could be issued under a lower probable cause requirement than in criminal cases. *Id*. at 534, 538–39. Probable cause to issue an administrative warrant exists "if reasonable legislative or administrative standards for conducting an area inspection are satisfied" — the government does not necessarily need "specific knowledge of the condition of the particular dwelling" to be inspected. *Id*. at 538; *see also id*. ("Such standards . . . may be based upon the passage of time, the nature of the building (*e.g.*, a multi-family apartment house), or the condition of the entire area . . . ."). In *See v. City of Seattle*, 387 U.S. 541 (1967). decided on the same day, the Court applied the principles of *Camara* to inspections of commercial premises. ***"The businessman, like the occupant of a residence, has a constitutional right to go about his business free from unreasonable official entries upon his private commercial property."*** *Id*. at 543. Moreover, "[t]he agency's particular demand for access will of course be measured, in terms of probable cause to issue a warrant, against a flexible standard of reasonableness that takes into account the public need for effective enforcement of the particular regulation involved." *Id*. at 545. numerous federal and state statutes provide

for inspections by administrative warrants. And so do the Members of ONAC. They are not a business but they are a recognized church will all the rights and privileges of any other Church in Sonoma.

8. **The closely regulated industry exception does not give the government license to inspect any business whenever it pleases.** First, the exception is not self-executing. While it gives legislatures the option to enact statutes authorizing warrantless searches, the people's representatives must affirmatively decide to do so. Until that happens, inspections of even the most stringently regulated businesses require judicial approval. Furthermore, the legislature can grant inspectors less than the full authority possible under the Fourth Amendment: for instance, authorizing inspections of premises and inventory but excluding business records. Finally, the legislature chooses how the government can compel a business owner to submit to a lawful warrantless inspection: some inspection regimes require the inspector to seek an injunction while others permit the imposition of an immediate penalty. *Compare* Marshall v. Barlow's, Inc., 436 U.S. 307, 310 n.3 (1978) (noting that a regulation "requires an inspector to seek compulsory process if an employer refuses a requested search"), *with* City of Los Angeles v. Patel, 135 S. Ct. 2443, 2452 (2015) ("A hotel owner who refuses to give an officer access to his or her registry can be arrested on the spot."), See v. City of Seattle, 387 U.S. 541, 541 (1967), *and* Camara v. Mun. Court, 387 U.S. 523, 527 (1967). This choice carries significant Fourth Amendment implications.

9. In the first case, a court will order the business owner to permit the search only if the closely regulated industry exception applies and no other constitutional bar exists. Since this process provides for pre-compliance judicial review, the exception presents minimal, if any, Fourth Amendment concerns. In other words, if the industry is not closely regulated, then the Fourth Amendment requires a warrant. But even if the industry is closely regulated, the statutory scheme voluntarily provides for judicial oversight.

10. In the second case, however, the inspector can immediately arrest or issue a citation to business owners who refuse to permit a

warrantless inspection. The imposition of an immediate penalty is constitutional <u>only if the closely regulated industry exception applies</u>; otherwise the Constitution bars prosecution for insisting upon one's rights. By demanding a warrant, business owners seek a judicial forum to protect their right against unreasonable searches and seizures, but the closely regulated industry exception allows the legislature to shut the courthouse doors to such actions (or at least deter them through immediate penalties). To be sure, courts can sometimes review the searches afterward. Some cases, including *Colonnade* and *Biswell*, involve the exclusion of evidence discovered during warrantless administrative inspections. The good faith exception to the exclusionary rule applies in this context. *See* Illinois v. Krull, 480 U.S. 340, 349–55 (1987). Others involve 42 U.S.C. § 1983 claims for violations of plaintiffs' Fourth Amendment rights. *See, e.g.*, Rivera-Corraliza v. Morales, 794 F.3d 208, 210 (1st Cir. 2015). Then again, in both of these situations, courts will not necessarily decide whether the search was actually unconstitutional.

6.  In this case before this court we have a religious sanctuary. It is federally recognized, called Oklevueha Native American Church, and honors the indigenous American Native Cultures, Ceremonies and Sacraments of North and South America's spiritual practices. Oklevueha Native American Church and it's branches are the only current Native American Church that continues to honor the indigenous Native American practices. In blatant contrast and in serious violation of State and Federal Laws, the US Constitution and our Bill of Rights," and the State of California, which claims that it has the right to enforce their religious prejudice onto the constitutional rights of the Oklevueha Native American Church congregation. This is equivalent to the police or any agency going into the local Catholic Church and confiscating the

sacramental wine (another controlled substance), wafers and holy water. Since the property in question is one of the growing fields for all of the temples of ONAC, any attack on that field would be the same as an attack on the Catholic fields where they grow the sacramental wines for the church. Or going into any other Church and taking their sacramental materials. This is in direct violation of the FIRST AMENDMENT – FREEDOM OF RELIGION.

The past illegal and unconstitutional actions of the agencies of the County of Sonoma, including its sheriffs' department in wiping out last year's crop constitute clearly committed felony crimes against the defendant's civil and constitutional rights. (Title 18 U.S.C section code 241 & 242.) These crimes have been committed in a manner where the individuals who have perpetrated the unlawful acts may have wrongfully assumed immunity from civil or criminal prosecution.

These crimes also violate the recent unanimous decisions of the US Supreme Court.

**UDV v. UNITED STATES – Unanimous Ruling,**
**November 1, 2005**

"The Supreme Court heard oral arguments November 1, 2005, and issued its opinion February 21, 2006, finding that the **"Government failed to meet its burden under RFRA that barring the substance served a compelling government interest."**

"The court also disagreed with the government's central argument that the uniform application of the **"Controlled Substances Act (CSA) does not allow for exceptions for the substance in this case, as Native Americans are given exceptions to use Peyote,**

*another Schedule I substance."*

Additionally, the crimes of the officials of the State of Ohio have willfully and criminally violated the federally mandated unanimous court ruling requiring a compelling government interest test.

**UNITED STATES V. ROBERT BOYLL, Unanimous Ruling – May 10, 1990**

> *"Nowhere is it even suggested that the exemption applies only to Indian members of the Native American Church. Had the intention been to exclude non-Indian members, as the United States argues, the language of the exemption would have so clearly provided.* **Indeed, the federal peyote exemption makes no reference whatsoever to a racial exclusion**"
>
> *"The District Court, Burciaga, Chief Judge, held that:*
>
> *(1) permitting Indians' non-drug use of peyote in bona fide religious ceremonies of Native American church, but prohibiting such use by non-Indians, would violate free exercise and equal protection clauses;*
>
> *(2)* **compelling interest test applied to free exercise challenge to prosecution of non-Indian member**, *and (3) prosecution would violate free exercise clause."*

7.   There are numerous cases upholding the Constitutional and Civil Rights of ONAC to have cannabis, peyote, and other plants and herbs that are from the Mother Earth and are Sacramental to ONAC and its members. The illegal seizures and forfeiture of the assets and sacraments of this Church are felonious actions of the uninformed officers or agents and their supervisors, accountability for criminal abuses of power, obstruction of justice and all violations of both Constitutional and Civil

Rights of the Church must be remedied, to ONAC, its members and leaders.

8. A conspiracy has been uncovered against ONAC leadership and the church, this conspiracy is a violation of their rights under the FIRST AMENDMENT – FREEDOM OF RELIGION. The conspiracy involves different governmental agencies at varying levels of government. The facts that this conspiracy is real are as follows:

The urge to create the church known as ONAC was due to the Native American Church of North America (NACNA) prejudicial racial discriminating policies, in which James Mooney was a member and Vice President of the Salt Lake City Branch. NACNA racial and discriminating policies is demanded and enforced by it's legal representative the Native American Rights Fund (NARF) *(See attachment E)* that was created in (1973) and influenced by political and Christian religious organizations backing the BIA conspiracy to keep Native American Churches off of Federally Recognized Indian Tribal Reservations and from receiving their full rights, privileges and protections that is clearly outlined in the Bill of Rights.

Presently the United States Attorney General and its affiliate agencies seek out the BIA and NARF for advice on what is or not a bona fide Native American Church based on racial and political factors.

This conspiracy to deprive Oklevueha Native American Church of its civil liberties has been experienced through-out our nation from Hawaii to the East Coast of the United States, since its inception.

## Compelling Interest

9. Compelling-state-interest-test refers to a method of determining the constitutional validity of a law. Under this test, the government's interest is balanced against the individual's constitutional right to be free of law. However, a law will be upheld only if the government's interest is strong enough.

10. In Howe v. Brown, 319 F. Supp. 862 (N.D. Ohio 1970), it was held that, the compelling-state-interest-test is mostly applied in all voting rights cases and equal protection cases. It is also applied when a disputed law requires strict scrutiny.

11. There are numerous cases upholding the rights of ONAC to have marijuana, peyote, and other plants and herbs that are from the Mother Earth and are sacramental to the tribe and its members of this Church.

12. It has been long believed by the ONAC leadership that there is a conspiracy which is causing all of the violation of their rights to the FIRST AMENDMENT – FREEDOM OF RELIGION by different governmental agencies.

## STATEMENT OF FACTS:

a. Cannabis & has a worldwide history of religious use.
b. Cannabis, under the names Rosa Maria and Santa Rosa, have been traditionally used in religious ceremonies of Native peoples of North and South America.
c. The Oklevueha Native American Church, are valid and recognized places of worship.
d. The current federally legislated policy of this country is to protect and preserve Oklevueha Native American Church's rights to freely

exercise its traditional ceremonial practices. (42 USC 1996 a).

e. *Plaintiffs practices involving Sacraments; Peyote, Cannabis, Mushrooms (psilocybin) , Ayahuasca, San Pedro and or any plant, cactus, mushroom (psilocybin) produced by the Earth are received in Indigenous American Native traditional religious ceremonies.*

f. The Oklevueha Native American Church encourages people to regain their relationship with the Creator through the use of sacrament, prayer and traditional indigenous American Native Ceremonies.

## FIRST CLAIM FOR INJUNCTIVE RELIEF
## AGAINST ALL DEFENDANTS

13.     Plaintiff re-alleges each and every allegation contained in ¶¶ 1 – 12.

14.     Plaintiff is seeking an injunction prohibiting any entry onto their property without a valid search warrant issued by this court. Additionally, if the police, sheriffs or any inspectors claim that they found something that is in violation of any law that said inspectors or law enforcement officers be required to present said evidence to this court in open hearing so that Plaintiff can respond to said claims and to be able to assert their FIRST AMENDMENT RIGHTS OF FREEDOM OF RELIGION.  That the officers and inspectors not be

allowed to destroy anything on the property without obtain court approval.

WHEREFORE, Plaintiffs prays for judgment as follows:

    1.    For an injunction prohibiting any entry onto their property without a valid search warrant issued by this court. Additionally, if the police, sheriffs or any inspectors claim that they found something that is in violation of any law that said inspectors or law enforcement officers be required to present said evidence to this court in open hearing so that Plaintiff can respond to said claims and to be able to assert their FIRST AMENDMENT RIGHTS OF FREEDOM OF RELIGION. That the officers and inspectors not be allowed to destroy anything on the property without obtain court approval.

    2.    Such other relief as the court deems proper.

DATED: August 22, 2016    THE CENTER FOR INDIGENOUS LEGAL AFFAIRS

/s/ Lee H. Durst

BY _____

Lee H. Durst

Attorney for Plaintiffs

Verification

I, the undersigned, am a member of the ONAC and have read the attached complaint and know the facts thereunder. I declare under penalty of the United State of America that all of the foregoing is true and correct, except for any part that was based upon information and belief, and as to that part I have been informed and based upon that information I belief that information is also true and correct.

Executed on 22 August 2016.

_____
JAMES MOONEY

_____
JAMES MOONEY, FOR
OKLEVUEHA NATIVE AMERICAN CHURCH

_____
SCOTT BATES

_____
SCOTT BATES, FOR
ONAC VALLEY OF THE MOON CHURCH